UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| JOYCE D. OTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:09-CV-166 |
| | ) | (PHILLIPS/SHIRLEY) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment [Doc. 13] and Defendant's Motion for Summary Judgment [Doc. 20]. Plaintiff Joyce D. Ott ("Plaintiff"), seeks judicial review of the decision of Administrative Law Judge ("ALJ") Joan A. Lawrence denying her benefits, which was the final decision of Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On January 21, 2005, Plaintiff filed an application for supplemental security income ("SSI"), alleging a period of disability which began on May 15, 2001. [Tr. 14]. After her application was denied initially and also denied upon reconsideration, Plaintiff requested a hearing. On November 6, 2007, a hearing was held before ALJ Joan A. Lawrence to review the determination of Plaintiff's claim. [Tr. 729-46]. On January 24, 2008, the ALJ found that Plaintiff was not under a disability from January 21, 2005, through the date of the decision. [Tr. 14-23]. On February 24, 2009, the Appeals Council denied Plaintiff's request for review; thus, the decision of the ALJ became the final

decision of the Commissioner. [Tr. 2-5]. Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## I.    ALJ FINDINGS

The ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since January 21, 2005, the application date (20 CFR 416.920(b) and 416.971 *et seq.*).

2. The claimant has the following severe impairments: anxiety, seizures, chronic obstructive pulmonary disease (COPD), arthritis, and disorder of the back (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift/carry 50 pounds on an "occasional" basis and 25 pounds on a "frequent" basis. She can stand and/or walk (with normal breaks for a total of about 6 hours in an 8-hour workday, and can sit (with normal breaks) for a total of about 6 hours in an 8-hour workday. She can push/pull at a level consistent with her ability to lift/carry. The claimant is precluded from work exposing her to dust, fumes, smoke, chemicals, or noxious gases. She should avoid all exposure to hazards. She is limited but can still deal with the public, maintain attention/concentration, and respond appropriately to changes in the work setting. These exertional and non-exertional limitations are commensurate with a residual functional capacity for a significant range of medium work and are consistent with the findings of the State Agency designated physicians.

5. The claimant is capable of performing past relevant work as a production laborer. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

6. The claimant has not been under a disability, as defined in the Social Security Act, since January 21, 2005 (20 CFR 416.920(f)), the date the application was filed.

[Tr. 13-19].

## II. DISABILITY ELIGIBILITY

An individual is eligible for SSI payments if she has financial need and she is aged, blind, or under a disability. See 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if her physical and/or mental impairments are of such severity that she is not only unable to do her previous work, but also cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Whether a SSI claimant is under a disability is evaluated by the Commissioner pursuant to a sequential five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that

> accommodates his residual functional capacity and vocational factors
> (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

A claimant bears the burden of proof at the first four steps. Id. The burden of proof shifts to the Commissioner at step five. Id. At step five, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007); Richardson v. Perales, 402 U.S. 389, 401 (1971) (citing Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health &

4

Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "zone of choice within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings[1] promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004) ("Although substantial evidence otherwise supports the decision of the Commissioner in this case, reversal is required because the agency failed to follow its own procedural regulation, and the regulation was intended to protect applicants like [plaintiff]."); id. at 546 ("The general administrative law rule, after all, is for a reviewing court, in addition to whatever substantive factual or legal review is appropriate, to 'set aside agency action...found to be...without observance of procedure required by law.'") (quoting 5 U.S.C. § 706(2)(d) (2001)); cf. Rogers, 486 F.3d at 243 (holding that an ALJ's failure to follow a regulatory procedural requirement actually "denotes a lack of substantial evidence, even when the conclusion of the ALJ may be justified based upon the record"). "It is an elemental principal of administrative law that agencies are bound to follow their own regulations," Wilson, 378 F.3d at 545, and the Court

---

[1] See Blakley, 581 F.3d at 406 n.1 ("Although Social Security Rulings do not have the same force and effect as statutes or regulations, '[t]hey are binding on all components of the Social Security Administration' and 'represent precedent final opinions and orders and statements of policy' upon which we rely in adjudicating cases.") (quoting 20 C.F.R. § 402.35(b)).

therefore "cannot excuse the denial of a mandatory procedural protection...simply because there is sufficient evidence in the record" to support the Commissioner's ultimate disability determination, id. at 546. The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and "will not result in reversible error *absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses*." Wilson, 378 F.3d at 546-47 (emphasis added) (quoting Connor v. United States Civil Serv. Comm'n, 721 F.2d 1054, 1056 (6th Cir. 1983)). Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547 (holding that an ALJ's violation of the rules for evaluating the opinion of a treating medical source outlined in 20 C.F.R. § 404.1527(d) was a deprivation of an "important procedural safeguard" and therefore not a harmless error). If a procedural error is not harmless, then it warrants reversing and remanding the Commissioner's disability determination. Blakley, 581 F.3d at 409 (stating that a procedural error, notwithstanding the existence of substantial evidence to support the ALJ's ultimate decision, requires that a reviewing court "reverse and remand unless the error is a harmless *de minimis* procedural violation").

On review, Plaintiff bears the burden of proving her entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV. ANALYSIS

Plaintiff raises five arguments on appeal:

(A) The ALJ erred when determining Plaintiff's mental and physical residual functional capacity ("RFC") by failing to properly consider a Vocational Evaluation [Tr. 421-29] provided by Ms. Becky Brown on November 19, 2004;

(B) The ALJ erred when determining Plaintiff's mental and physical RFC by improperly evaluating the credibility of Plaintiff's own statements and self-reports;

(C) The ALJ erred when determining Plaintiff's physical RFC by improperly considering and weighing the opinions of state disability determination services ("DDS") examiners;

(D) The ALJ erred when determining Plaintiff's mental RFC by improperly considering evidence of Plaintiff's global assessment of functioning ("GAF") scores; and

(E) The ALJ erred at step four of the sequential evaluation process by relying upon an incorrect statement of Plaintiff's work history.

Plaintiff contends that the first four errors caused the ALJ to make an RFC determination that was incorrect and unsupported by the record. Plaintiff argues that the ALJ's finding that she has the physical RFC to perform "a significant range of medium work," [Tr. 17-18], was not supported by substantial evidence. Plaintiff also argues that the ALJ's finding that "she is limited but can still deal with the public, maintain attention/concentration, and respond appropriately to changes in the work setting," [Tr. 17], was not supported by substantial evidence. Plaintiff fails to explain how the fifth alleged error deprived her of an important procedural benefit or safeguard, or led the ALJ to make a finding that was unsupported by substantial evidence. See [Doc. 14 at 21]. Thus, even if the fifth allegation of error is true, Plaintiff has not demonstrated that it warrants remand. See Wilson, 378 F.3d at 546-47 (explaining that an ALJ has not committed "reversible error absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights"). Accordingly, the Court will not address Plaintiff's fifth allegation of error.

7

The Commissioner contends that the ALJ considered the entire record, and that substantial evidence supported her determination of Plaintiff's RFC and her finding that Plaintiff is capable of performing past relevant work. [Doc. 21 at 11, 18, and 20]. The Court addresses Plaintiff's first four allegations of error, and the Commissioner's specific responses thereto, in turn.

**A.     The ALJ erred by failing to expressly discuss Ms. Brown's Vocational Evaluation in her narrative decision.**

Plaintiff argues that the ALJ erred when determining her mental and physical RFC by failing to properly consider a Vocational Evaluation [Tr. 421-29] provided by Ms. Becky Brown on November 19, 2004. Plaintiff asserts that the ALJ "refused to acknowledge the existence" of the Vocational Evaluation, and accordingly made "no mention of the [Evaluation] anywhere in [her] decision." [Doc. 14 at 17-18]. Plaintiff argues that the ALJ's failure to expressly discuss the Vocational Evaluation was contrary to Social Security Ruling ("SSR") 06-03p, which requires that "evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered." [Doc. 14 at 18] (quoting SSR 06-03p, 2006 WL 2329939, at *6 (08/09/06)). Plaintiff concludes that the ALJ's failure to comply with SSR 06-03p requires remanding this case. See [Doc. 14 at 18] ("SSR 06-03p has served as the basis for a number of remands.").

In response, the Commissioner contends that "there was no error on the ALJ's part by failing to specifically discuss the November 2004 Vocational Evaluation." [Doc. 21 at 17]. The Commissioner argues that Ms. Brown "was not an acceptable medical source," and that her consideration of Plaintiff's physical limitations "was largely based on Plaintiff's subjective statements." [Doc. 21 at 17]. The Commissioner also argues that "to the extent that Ms. Brown

8

provided an evaluation regarding Plaintiff's mental abilities, the Vocational Evaluation and Ms. Brown's opinion were reviewed by Dr. Davis, a state agency psychologist" whose Psychiatric Review Technique ("PRT") report [Tr. 442-55] was relied upon by the ALJ. [Doc. 21 at 17].

The Court agrees with Plaintiff, and finds that the ALJ's failure to expressly discuss Ms. Brown's Vocational Evaluation in her narrative decision must be characterized as error. The Commissioner is correct that Ms. Brown was not an acceptable medical source.[2] But that fact alone did not free the ALJ from all responsibility to consider and expressly address Ms. Brown's Evaluation. SSR 06-03p imposes procedural requirements on ALJs regarding the consideration of opinions from "other sources" and "decisions on disability by other governmental and nongovernmental agencies." 2006 WL 2329939, at *6. Regardless of whether the ALJ categorized Ms. Brown's Evaluation as an opinion from an "other source" or as a decision on disability from a nongovernmental agency, she was required to provide some explanation of the consideration it was given.

With regard to explaining the consideration given to opinions from "other sources," SSR 06-

---

[2] When determining a claimant's RFC, an ALJ is required to evaluate every medical opinion in the record, regardless of its source. 20 C.F.R. § 416.927(d). A "medical opinion" is defined as a statement from a physician, psychologist, or "other acceptable medical source" that reflects "judgments about the nature and severity of [a claimant's] impairment(s)." 20 C.F.R. § 416.927(a)(2). "Other acceptable medical sources" are licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. §§ 416.913(a); 416.902 ("acceptable medical source refers to one of the sources described in § 416.913(a) who provides evidence about [a claimants's] impairments"). Ms. Brown was a self-described "vocational evaluation specialist," [Tr. 427], and nothing in the record indicates that she was an "acceptable medical source" in this case. See 20 C.F.R. § 416.913(a). The Court notes that while "licensed or certified psychologists" are listed as acceptable medical sources, nothing in the record establishes that Ms. Brown's certifications as a "rehabilitation counselor" and "vocational evaluator," [Tr. 427], qualify her as a psychologist. Accordingly, Ms. Brown's Evaluation was not a "medical opinion," and the ALJ was not required to consider it as such or to accord it any special deference. See 20 C.F.R. § 416.927(a)(2). However, as explained *supra*, the ALJ was still required to expressly explain the consideration she gave to the Evaluation.

9

03p states as follows:

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, *the adjudicator generally should explain the weight given to opinions from these "other sources,"* or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

Id. (emphasis added).

With regard to explaining the consideration of "decisions on disability by other governmental and nongovernmental agencies," SSR 06-03p imposes an even stricter requirement:

> Because the ultimate responsibility for determining whether an individual is disabled under Social Security law rests with the Commissioner, we are not bound by disability decisions by other governmental and nongovernmental agencies. In addition, because other agencies may apply different rules and standards than we do for determining whether an individual is disabled, this may limit the relevance of a determination of disability made by another agency. *However, the adjudicator should explain the consideration given to these decisions in the notice of decision for hearing cases* and in the case record for initial and reconsideration cases.

Id. at *7 (emphasis added).

In this case, the ALJ failed to even mention Ms. Brown's Evaluation in her narrative decision. That failure was plain error. The Court rejects the Commissioner's argument that the error was excusable because the ALJ did rely upon and expressly discuss at least one opinion provided by a consultative DDS psychologist who himself reviewed Ms. Brown's Evaluation. See [Doc. 21 at 17] (arguing that the Evaluation "was reasonably considered by Dr. Davis in forming his

opinion"). The ALJ did not explain in her narrative decision whether Dr. Davis incorporated or rejected Ms. Brown's Evaluation in his PRT report. Thus, the ALJ's decision simply does not allow Plaintiff or the Court to follow her reasoning concerning Ms. Brown's Evaluation. See SSR 06-03p, 2006 WL 2329939, at *6. Accordingly, the Court concludes that this case should be remanded so that the ALJ can properly consider and discuss Ms. Brown's Evaluation.

**B.      The ALJ did not properly evaluate Plaintiff's credibility.**

Plaintiff contends that the ALJ erred when determining her mental and physical RFC by improperly evaluating the credibility of her own statements and self-reports regarding the severity and limiting effects of her impairments. [Doc. 14 at 20]. In response, the Commissioner contends that the ALJ properly found that Plaintiff was not entirely credible. The Commissioner argues that the ALJ appropriately discounted the credibility of Plaintiff's statements because those statements were inconsistent with the Physical RFC Assessment [Tr. 430-37] provided by state DDS examining physician Dr. Celia Gulbenk, M.D., various "diagnostic tests and treatment notes" in the record, and Plaintiff's history of conservative medical treatment. [Doc. 21 at 12-15].

The Court agrees with Plaintiff's contention, and finds that the ALJ failed to comply with SSR 96-7p, 1996 WL 374186 (07/02/96), when addressing Plaintiff's credibility in her narrative decision. The ALJ stated as follows: "After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible." [Tr. 19]. For the following reasons, the ALJ's finding was inadequate and unsupported by substantial evidence.

An ALJ must determine a SSI claimant's RFC between steps three and four of the five-step

11

sequential disability evaluation process. 20 C.F.R. § 416.920(a)(4). A claimant's RFC is defined as "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). In order to determine a claimant's RFC, the ALJ must consider "descriptions and observations of [the claimant's] limitations from [her] impairment(s), including limitations that result from [the claimant's] symptoms, such as pain, provided by [the claimant]" herself. 20 C.F.R. § 416.945(a)(3). When considering a claimant's statements, the ALJ must "make a finding on the credibility of [the] statements based on a consideration of the entire case record." SSR 96-7p, 1996 WL 374186, at *2. Essentially, the ALJ must decide whether the claimant is telling the truth about the degree to which her impairments limit her personal activities. Id.

> SSR 96-7p explains how the ALJ must make the credibility determination:
>
>> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

Id. at *4.

SSR 96-7p further explains that the ALJ should expressly address opinions concerning the claimant's credibility that are contained in the record:

> [I]f the case record includes a finding by a State agency medical or psychological consultant or other program physician or psychologist

> on the credibility of the individual's statements about limitations or restrictions due to symptoms, the adjudicator at the administrative law judge or Appeals Council level of administrative review *must consider and weigh this opinion* of a nonexamining source under the applicable rules in 20 CFR 404.1527 and 416.927 *and must explain the weight given to the opinion in the decision.*

Id. at *8 (emphasis added).

In this case, the ALJ did not clearly articulate why she believed Plaintiff's statements and self-reports were incredible. She did not connect specific statements made by Plaintiff to specific reasons undermining the credibility of those statements. Further, the ALJ failed to address the credibility findings made by DDS psychologist Dr. George Davis and DDS psychological examiner John Porter. In his PRT report [Tr. 442-55] dated February 9, 2006, Dr. Davis specifically noted that "claimant's allegations are credible." [Tr. 455]. And Mr. Porter stated in his examination report that "[Plaintiff] was felt to be a credible informant." [Tr. 465]. The ALJ's failure to consider and explain the weight given to the credibility findings of Dr. Davis and Dr. Porter clearly ran afoul of the requirements of SSR 96-7p. Accordingly, the Court concludes that this case should be remanded so that the ALJ can properly evaluate Plaintiff's credibility by (1) explaining her reasoning, and (2) appropriately addressing the credibility findings made by Dr. Davis and Dr. Porter.

**C.  The ALJ must reconsider and re-weigh the medical opinions of record when she determines Plaintiff's physical RFC on remand.**

Plaintiff contends that the ALJ erred when determining her physical RFC by improperly considering and weighing the opinions of state DDS examiners. Plaintiff argues that the ALJ did not provide a reasonable explanation for giving great weight to the opinion [Tr. 568-70] of Dr. Jeffrey Summers, M.D., rendered on November 16, 2004, while giving less weight to a second opinion [Tr. 532-35] from Dr. Summers rendered on March 12, 2005, and "little weight" to the

opinion [Tr. 463] of Dr. Craig Layman, M.D., rendered on January 31, 2006. [Doc. 14 at 19]. The Court declines to review the propriety of the relative weight given to the various medical opinions in the record. The ALJ's errors detailed *supra* in parts A and B resulted in a statement of Plaintiff's physical RFC that was not supported by substantial evidence. Accordingly, the Court has already recommended that this case be remanded to the ALJ for a proper determination of Plaintiff's RFC. On remand, the ALJ must reconsider and re-weigh the opinions provided by Dr. Summers, Dr. Layman, and the other consultative and examining physicians.

**D.    The ALJ must explain the consideration she gave to Plaintiff's GAF scores**.

Plaintiff contends that the ALJ erred when determining her mental RFC by improperly considering her global assessment of functioning ("GAF") scores. [Doc. 14 at 21]. The ALJ discussed Plaintiff's GAF scores as follows:

> The claimant has received mental health treatment from Dr. Quigley. These records show that the claimant's global assessment of functioning (GAF) has fluctuated from 50, which connotes the upper end of the scale of serious symptoms, as 51 connotes moderate symptoms, to 70, which connotes mild symptoms...
>
> With mental health treatment received at Cherokee Health Systems, the claimant's GAF rose to 75. This connotes no more than slight impairment in social, occupational or school functioning.

[Tr. 21].

Plaintiff asserts that her treatment at Cherokee lasted from 1998 through 2004, and she argues that the ALJ disingenuously focuses on her GAF scores during this period while failing to discuss her GAF scores registered after this period. [Doc. 14 at 21]. Plaintiff asserts that her GAF scores after 2004 "fairly steadily declined." [Doc. 14 at 21]. The Commissioner responds that "the ALJ did not rely on Plaintiff's GAF scores to evaluate the limiting effects of Plaintiff's mental

14

condition." [Doc. 21 at 18].

The Court finds that the extent to which the ALJ relied on Plaintiff's GAF scores when determining Plaintiff's mental RFC is unclear. If the ALJ meant for her discussion of Plaintiff's GAF scores to serve as evidence supporting a conclusion that Plaintiff was only slightly limited in her ability to mentally function in an occupational setting, then her discussion was inadequate. It is improper for an ALJ to selectively focus on only some GAF scores in a claimant's record. In this case, if the ALJ wanted to rely on GAF scores as evidence supporting her statement of Plaintiff's mental RFC, she needed to provide both a full explanation of Plaintiff's GAF scores over the entire period of time covered by the record *and* a discussion of whether each GAF score was expressly based on an assessment of Plaintiff's mental capacity to work, rather than her mental capacity to perform other tasks or function in other environments.

A claimant's GAF score, based on a 100 point scale, signifies an individual clinician's subjective assessment of the claimant's overall psychological condition. Kornecky v. Comm'r of Soc. Sec., 167 Fed. App'x 496, 503 n.7 (6th Cir. 2006). A GAF score does not constitute raw medical data; it is a simplified statement of the scoring clinician's overall impression of an individual's mental function. Id. If the basis for a particular GAF score is carefully explained by the scoring clinician, the score may be useful to the ALJ in determining a claimant's RFC. See Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002). However, because a GAF score can be based on any of a number of different factors, it is not probative of a claimant's occupational functioning unless it is explicitly based on the scoring clinician's assessment of the claimant's work capacity. See Kornecky, 167 Fed. App'x at 511 (citing Quaite v Barnhart, 312 F. Supp. 2d 1195, 1200 (E.D. Mo. 2004)). Even where the scoring clinician's records make plain that a claimant's

GAF score is based on her work capacity, the ALJ is not required to rely upon the score or address it in his narrative decision. Howard, 276 F.3d at 241.

In this case, the Court finds that the ALJ's discussion of Plaintiff's GAF scores was inadequate. The ALJ was not required to rely upon or expressly address Plaintiff's GAF scores, but since she chose to do so she was obligated to fully explain how she used the scores in her decision-making process. The Court has already recommended, *supra*, that this case be remanded to the ALJ for a proper determination of Plaintiff's RFC. On remand, the ALJ must either properly explain the consideration given to Plaintiff's GAF scores or elect not to rely on the scores as probative evidence of Plaintiff's mental RFC.

## V. CONCLUSION

For the foregoing reasons, it is hereby **RECOMMENDED**[3] the Commissioner's Motion for Summary Judgment **[Doc. 20]** be **DENIED**, and that Plaintiff's Motion For Summary Judgment **[Doc. 13]** be **GRANTED** to the extent that it requests that this case be remanded to the Commissioner pursuant to 42 U.S.C. § 1383(c)(3) and sentence four of 42 U.S.C. § 405(g) for a new hearing consistent with this report.

Respectfully submitted,

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[3] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Fed'n of Teachers, 829 F.2d 1370 (6th Cir. 1987).